May it please the court. I'm Bob Schuster for Mr. Andrew Johnson. It is manifest injustice when an innocent man spends 24 years in prison. But the injustice in this case was repeated and multiplied when Mr. Johnson's current civil rights action was dismissed on the basis that it was precluded by two earlier cases filed when he was a prisoner, pro se, and entirely innocent. As a first reason for reversal, Rule 60B6 specifically provides relief for the circumstances of this case. The district court abused its discretion when it denied Mr. Johnson's 60B6 motion. This circuit has repeatedly held that it is necessarily an abuse of discretion if a district court bases its ruling on an erroneous view of the law. Here, the district court based its ruling on three erroneous views of the law. The ruling should be reversed. First, contrary to the district court's ruling, Rule 60B6 is not limited to equitable proceedings and is applicable to cases seeking money damages. Second, extraordinary circumstances do not need to provide evidence or support for the claims made in the prior cases. No link to proof of any claims is required in 60B6, nor did the district court cite any case for that proposition. And third, the filing of prior cases does not disqualify Rule 60 relief. The rule accepts the fact that there have been prior cases, and it's the very reason for having a rule. Let me just ask you from the outset on the 60B6 front. Let's assume, just for purposes of discussion, that we were to find in your favor on the 60B6 issue. How does that play out in terms of the other orders that are before us on appeal? I guess I would ask two questions. One, let's assume hypothetically that we found a problem with this law equity business and were to find that there were errors there. Should we remand for the court to then adjudicate the 60B6 motion under the right legal framework? I'll just stop with that question first and go from there. Well, your honors, I think that you can decide that here. I think that it's fully something that this court can review and decide that, in fact, 60B6 relief is appropriate. Well, I don't doubt we probably could decide it. I mean, do you think that that is the most appropriate option? Yes. Okay. I think it's the most expeditious thing for this court. Okay. Let's assume that we do decide to remand instead. How does that impact the 12B6 actions of the district court, which are also here on appeal? In other words, what's the spillover effect, if any, as it relates to the adjudication on the 60B6? Well, I think that it would depend upon what your order said, that if you remanded with direction to enter the 60B6 order. No, no, no. I guess what my hypothetical contemplates is beyond the decision as to legal error, we would remand for the court to actually adjudicate the 60B6. So we'd be fighting in your favor just on the question that the court erred legally and then remanded. So let's assume that hypothetical set of facts. Now, what would be the impact, if any, on the adjudication of the 12B6? Well, again, I think it would depend upon your order. Okay. And I'm not trying to- No, no. I'm trying to understand. I think that you could ... I think that in addition to ruling on 60B6, you could also rule on 12B6 and make a decision there. I think that you could grant our request that the court be reversed on 12B6 so that you would determine that none of those cases were preclusive. And so your prior cases, I mean, the 12B6 ground, at least the principal ground, was that the action was precluded, the actions, the 1991 action and the 1992 action, where they had a claim-preclusive effect. And your argument to the contrary is that they don't have such an effect. And so if we were to say, all right, you're fine, you were right, that they don't have a claim-preclusive effect, we could do that quite apart from whatever happened on the 60B6. Certainly. Okay. Just trying to see what the moving parts would be, that's all. Go ahead, please. There are a few moving parts. But thank you for the question. Questions? Mr. Johnson's circumstances are extraordinary. He spent 24 years in prison. He was, at all times, actually innocent. The order of actual innocence thoroughly impeaches the orders entered in both the 91 and 92 actions and, accordingly, is directly related to the operative facts of both actions. Both prior judgments were based on the assertion that Mr. Johnson was overwhelmingly guilty, but we know he was actually innocent. There's no other reported case in Wyoming history in which a person was convicted of a crime, spent even one day in prison, and then was released with an order of actual innocence. It's extraordinary by its singularity. These are manifestly extraordinary circumstances. Reversing the orders of the district court based on Rule 60B6 is the most direct resolution of this appeal. However, additional grounds for reversal on de novo review result from the district court's rulings on the 60B6 motions in two principal respects. The initial and fundamental 12B6 error was that the district court exceeded the court's boundaries, this court's boundaries, for 12B6 review. This court has always recognized that 12B6 dismissal is extreme because it ends a case before there's any opportunity to look at any facts. So the district court's review must be conducted within narrow limits. Brokers' Choice v. NBC teaches that. Also, Gee v. Pacheco. Here, the trial court ignored Brokers' Choice in other cases in virtually every respect. Brokers' Choice says that if materials outside the pleadings are presented, as a general rule, they must be excluded or the motion converted to 56. Here, the district court neither excluded nor converted. Brokers' Choice says that the court can review materials attached to the complaint or referenced in the complaint. Here, there were no materials attached to or referenced in the complaint. In resolving the claim preclusion issue, which is an issue that arises in the context of the 2017 action, it needed to look at its take judicial notice of its prior court records and our law allows for that, including a case I authored, a Hidley, which specifically speaks to exactly what happened here. Well, Your Honor, the Tenth Circuit decisions say that yes, a district court can take judicial notice of pleadings, but it cannot then, it's only to the existence of the court files rather than to their contents and not to prove the case. To know what arguments were raised, you consider that to be a truth of the fact? The matters that were concerned in the district court's decision concerned factual issues as to what happened in those proceedings, whether or not I-classes were found, whether or not I-classes were cumulative, whether they were extraneous. There were those materials before that court were then viewed and considered to make the decision that Judge Scavdahl's decision, that in fact, there were, that the elements of preclusion were satisfied. Why didn't they necessarily have to be considered in order to do that? I mean, how is one going to go about this exercise without being able to know exactly what issues were at play and the matters that were dealt with in these prior actions? I mean, you know, it is entirely material to the claim preclusion determination that you do that. I agree completely with Your Honor, and I think that those are completely necessary. Well, tell me where I'm wrong then. Go ahead. I don't think you're wrong. I think that those things needed to be looked at if you're going to make that determination because they're essentially fact-based, but you don't do that within the confines of 12b-6. You convert to Rule 56, and if you don't convert to Rule 56, at that point, you have erred. Well, what would be, in that circumstance, the added value of converting to Rule 56? Number one, just sort of as a practical matter, I don't see what the difference would be. I mean, this is not a situation where you're going to relitigate what the facts were that were at play in the 1991 and 92 action, and so what difference does it make? You have a public record that shows what the court relied upon and how things transpired at that point. The public record reflects part of it. What is not reflected, for instance, is a testimony of Mr. Johnson. There is nothing in the record that talks about the fact that what happened to him in those proceedings, that he didn't have counsel. What impediments did that have for him? To determine whether or not there's full and fair opportunity to litigate is a fact-based inquiry, and you do that under Rule 56, where then Mr. Johnson has an opportunity to come in and present his facts. In this particular case, Your Honor, the district court reached its decision in regard to the 1991 case without having any evidence in the record in front of it concerning the denial of the jury demand. That was only presented to him by us after he had ruled on the dismissal, and that's a key element of whether or not there's full and fair opportunity. I don't want to belabor this too much, but let me ask you this. Remind me, there were a lot of moving parts, as I said. Was there any objection to proceeding under 12B6 raised at that time? Let me be very specific as to what was raised before. In fact, before the decision was made, we objected on the basis of there being no full and fair opportunity to litigate. We before the ruling said that we wanted to have the right to file an amended complaint, and we proffered proffers regarding an amended complaint before that. In terms of objecting to the materials outside the pleadings, our research shows that that wasn't until August 24th, and the failure to convert to summary judgment, not until August 24th. You objected on August 24th, you say, to the failure to convert to summary judgment? We did. And August 24th was after or before the court actually ruled? It was after, Your Honor. Well, what does that get you? If the court's going to make a decision, a motion to dismiss is filed, you engage on the motion to dismiss, you don't object to engaging on the motion to dismiss, and then the court looks at the files and rules, and then you say, oh, whoa, whoa, no, you should have entertained this summary judgment motion. That sounds like waiver to me. Well, Your Honor, I don't think that it is. And why not? That is an issue that you will need to deal with. Besides, yes. But it is the obligation of the district court to also follow the rules, and not then to  give a checkup. It's not just counsels. But I've got now a minute and 12, so may I reserve? Can I ask you one question before you do? Sure. When did you proffer your amended complaint? We did not. You did not. So you didn't file a motion with your amended complaint attached before the district court? We did not. We asked for leave to file an amended complaint, and I think... Your request for leave was part of your briefing on the dismissal motions? Yes, sir. And I think that the law is also clear that the district court, in making its ruling, needs to allow the amended complaint. Thirty seconds. It's a live time. Let's hope. Thank you. Counsel? May it please the court. My name is Justin Darrier with the Wyoming Attorney General's Office, and I'm representing defendants Pearson, Spencer, and Stanford in their individual capacities. I'll be sharing time today with counsel for the city of Cheyenne. Plaintiffs are asking this court to bend the rules of finality and claim preclusion out of sympathy in light of Mr. Johnson's exoneration. But in the words of Wright and Miller, it's better to avoid weakening claim preclusion out of sympathy for the plight of particular plaintiffs. And the fact is, in this case, Mr. Johnson was permitted to litigate civil defendants. And if the roles were reversed, and he had won those prior cases, defendants had paid and were now coming back asking for their money, Mr. Johnson would be arguing res judicata. As it were, he lost those cases, and the district court was right to preclude another round of litigating regarding the same parties and the same transaction or events. The district court properly analyzed res judicata as having three elements. This court's decision in Yap versus XL construction in 1999 in footnote four clarified that while there are references in this circuit and others to there being four elements to res judicata, there really are three. Identity of parties, cause of action, as that's identified for res judicata purposes, and a final ruling on the merits. And that a full and fair opportunity to litigate is really an exception when those other three elements are satisfied. Well, if you have the burden of persuasion as to the defense of claim preclusion, then you have to see it across the goalpost, don't you? So if there's an exception, why aren't you responsible for addressing the exception as well? Well, Your Honor, I think you're responsible for addressing it if the plaintiffs come forward and make a show of it. They did, didn't they? Well, we would disagree with that. Council testified how in response to the motion to dismiss, the only documents from the prior court cases were presented by the defendants in making their showing on the three res judicata elements. It was their opportunity in response to that motion to dismiss to come forward with other court records that might show that lack of full and fair opportunity to litigate. Is there any place in your briefing that you allege that they waived anything by raising these issues in the 59 and 60 context? To my knowledge, you didn't. So it seems to me that ship is gone. Right. And not necessarily arguing that there's been a waiver, but the showing on their part of the lack of fair and full opportunity to litigate didn't undercut res judicata in this case. And that the district court rightly found that based on what I'm seeing, he had a full, Mr. Johnson had a full and fair opportunity to litigate. Well, I'm sorry. No, please go ahead. Do you see a difference in the 91 and 92 cases as far as Mr. Johnson having a full and fair opportunity to litigate? I don't see a difference on that fact. I see, certainly there were differences in procedure and the levels of litigation. Right. Well, in 92, he was, his claim was dismissed as frivolous under 1915, right? That's correct. And haven't we held before that dismissal under 1915 doesn't have preclusive effect? I'm not exactly sure about that, Your Honor. The case that the plaintiff cite on that point does talk about a decision as frivolous under the IFP statutes, not being a decision on merits, if it was dismissed on frivolous grounds. But that case that the plaintiff cite was based on the new internal or informal papyrus statutes, where there are separate categories for dismissals on frivolous grounds or failure to state a claim. And so I'm probably springing this on you, but have you looked at the restatement of judgments? Does it suggest that when you have alternative grounds and one of them is based on 1915, that the case wasn't fully and fairly litigated? Well, I'm afraid I don't have that answer for you. I didn't get there. I did look at the Denton case, which is relied on heavily by the plaintiffs in arguing that a dismissal on the frivolous grounds under the IFP statutes is not a decision on the merits. And I think the Denton is distinguishable legally and factually. In Denton at the time, the IFP statutes were different. You could be dismissed if the allegation of poverty was untrue, if the complaint was malicious, or if it was frivolous. So at that time, the IFP statute, frivolous ground could encompass legal meritless arguments or factually fanciful or delusional arguments. And that was the situation the Denton court was grappling with. It had a complaint that the district court dismissed because the facts were fanciful and delusional. The Seventh Circuit, I believe, reversed and the Supreme Court took it up to decide whether that really is a valid basis to dismiss as frivolous. It found that it was. And in making that discussion, the court noted a dismissal on frivolous grounds under the IFP statute is not on the merits. But what the court in Denton wasn't grappling with was a decision below that it was frivolous because there was no legal merit to the argument. And that's the case we had with Mr. Johnson. When he appealed the 1992 dismissal to this court, this court found, you know, you're arguing about a witness's testimony at trial. There's witness immunity. There's no legal merit to your argument. Well, I mean, he got double-barreled in 92. I mean, he, on the 92 case, he, they, the court purported to kick him out on the merits and on 1915 grounds, right? That's right. That's my understanding. And do you, do you, how do you think it plays out the plaintiff's argument that, that the Heck v. Humphrey case basically made it to where in 92, he didn't have a case because he, his case was still alive when Heck was decided? When Heck was decided, I don't think, I think the district court was right in finding Heck didn't automatically apply to bar the case. I think this court has joined that camp of circuit courts that have found Heck isn't jurisdictional. If it applies to a case, it needs to be applied by someone. The court, the parties, typically it's the defense, but the Heck opinion itself says courts need to decide whether the Heck bar applies. That is whether, if the plaintiff is successful on their civil rights claim, it would necessarily invalidate their criminal conviction. If it wouldn't, the claim could go forward. So to make that determination, the court, the defense needs to be raised and it needs to be assessed. I think what, an example of how you might not get there, but still rule on the merits of the cases, you know, with this court's decision in Giron versus City of Lakewood, I believe in 2004, there, the dismissal below is based on qualified immunity grounds. And the district court took the extra step to say, I think Heck would also bar this case. But this court on review said, well, if we dismiss on qualified immunity grounds, it's with prejudice. So that has more weight than if we dismiss based on Heck, it's a dismissal without prejudice. We think this case can be done with, so let's analyze qualified immunity. And I don't, I've never seen a rule of law that said, you have to start with the Heck question, that you can't first go to element one of the, let's say, malicious prosecution and first determine whether the defendant's conduct caused the conviction, whether there was probable cause to support the conviction, whether the defendant's acted with malice. So theoretically, a court could analyze those elements and say, you lose on that. So is it your take that your client would have had to have raised the Heck issue? And that because your client didn't, it got waived and he was allowed to go forward with his case to the ultimate conclusion? Yes, essentially. Well, first, we obviously contend Heck didn't apply retroactively, even if it did, it wasn't raised by the plaintiff saying, this bars my case. Well, I'm talking about the 92 case in particular, which seemed to be still alive at the time of the decision. Right. And so, yes, I'd agree with you. It wasn't raised by us, Mr. Johnson or the court. And he didn't try to raise it by petitioning to the United States Supreme Court. So for those reasons, Heck really didn't come into play in the 1991 case or 1992 case. And when we compare those to the present lawsuit, we're dealing with the same parties, same defendants pursued in both, the same cause of action as that's Mr. Johnson's investigation and prosecution and the final decision on the merits. What we had in those prior cases were dismissals with prejudice, which is generally understood as being on the merits that comports with rule 41B of the civil procedure rules, which say... I'm struggling with the 1991 action, why he didn't get, why he got a full and fair opportunity to litigate. In effect, the district court deprived him of his jury trial right. So help me out because I don't get it. I mean, and it wasn't as if, at least my recollection is that he voiced objection to that process at that time in district court anyway, and the district court blew by that and dealt with it. So how did he get a full and fair opportunity to litigate in that context? I think the United States Supreme Court decision in Kramer v. XL Corporation clarified that when we're asked, considering a full and fair opportunity, we're requiring the minimal procedural due process requirements. And the court went on to say, there's no single model of what that is, but it generally is a notice and opportunity to be heard. If 1983 entitles you to a jury trial right, and you're denied a jury trial right, you're saying you're not getting, you're getting the minimum that's required of the matter. You are if there isn't a triable issue for the jury. I think this was a unique procedural. They took evidence. So it's not as if, I think the magistrate judge said this is a trial, right? Yes. And so, well, that sounds pretty persuasive that we weren't talking about summary judgment. We were talking about a trial. Except that the trial, the evidentiary hearing, which Mr. Johnson requested, didn't result in arguably material dispute of fact. The judge could make, really what it came down to was a legal question of what is what Officer Stanford did, coercive interrogation. That's not, that's not, there are no factual issues associated with that? There were some factual issues raised, but we contend they weren't material, that it really came down to just a legal question. We can agree on this about certain facts. The real issue here is, what does it mean as a matter of law? Did this amount to coercion? And on top of that, was any of this material to his conviction or was it just a matter of fact? And I think that's where the court decided, there's, I don't see an issue here where a jury needs to come in and weigh, make a credibility call or decide something. So is it your position that this is a case that would be akin to a summary judgment hearing where the court allowed some, the parties to put on some evidence? Yes. We'd be arguing substance over form in this case. Obviously, it's, it's unusual procedural proceedings. It was called a trial, but tantamount to a ruling on summary judgment. And I'm sorry to end short. I promise counsel, we'll do it at the time. Thank you. May it please the court. My name's Norman Giles. I represent Cheyenne, Wyoming. Lori Slagle is never... Would you move that microphone up a little closer? My Android ears need the help. Yes, Your Honor. Thank you. Lori Slagle has never informed any Cheyenne officer that Mr. Johnson is actually innocent. Instead, what she reported was that he violently attacked her after breaking into her home. Ms. Slagle also identified Mr. Johnson by name and his photograph. He was left at the scene of the attack. Ms. Slagle's neighbor called the police when Ms. Slagle was screaming and it appeared someone was breaking into her home. Officers took photographs. Officers protected or obtained evidence, including DNA evidence. They preserved the evidence and that's the evidence that ultimately led in Mr. Johnson being released. There was no evidence available at the time that the Cheyenne officers were involved in this case that would have shown that Mr. Johnson was actually innocent. Clearly, the information available showed that probable cause existed to arrest Mr. Johnson and to file charges against Mr. Johnson. Even if this court determines that the claim preclusion doesn't apply, the problem that goes back to the, that would ultimately go back to the district court is the plaintiff has still failed to allege facts which state a claim for unconstitutional conduct. Would that need to go back to the district court? I do not believe that it would. I mean, we could, couldn't we resolve that alternatively? You certainly could, Your Honor. And so I believe that we're, all the briefing fighting seems to be over the issue preclusion instance, but I think the threshold issue as to where the allegations state a claim are paramount here. Well, for the city of Cheyenne, in your view, has Mr. Johnson shown that some policy was the moving force behind any constitutional violation he suffered? Certainly not. The, the allegations as I understand them is that Mr. Johnson is alleging that... You can have a few seconds, but don't wind up too much. All right, go ahead. Thank you, Your Honor. As I understand, Mr. Johnson is asserting that some photographs may have been taken inside the house that could potentially be exculpatory, but certainly he's not alleged any facts that show that they could be in the context of this particular case where we had the victim of the crime, he's pointing out Mr. Johnson and saying he's the person who actually committed the crime. Over the time, I appreciate that. And thank you for letting me finish that. Thank you. Let me please be necessarily concise. First, Mr. Johnson did object to the denial of the jury trial. Second, the district court denied Mr. Johnson's dismissal, which is a very important issue. The effect was to preclude the plaintiff from making requests for leave to amend, requests to convert to rule 56, requests to assert no full and fair. The, in regard to the frivolous finding, it means that it's not on the merits and that there is no full and fair opportunity. Finally, the state, the same, I'm over my time. Go ahead and finish your thought. The same state court that convicted Mr. Johnson has judicially declared him to be actually innocent. We would ask that this court reverse the orders of the district court. Can I ask him a question? So you made an argument earlier about rule 60B-6. Are you still pursuing your argument under rule 60B-4 or are you abandoning that argument? We've not emphasized the goodness of people. I think, frankly, the 60B-6 is a stronger argument, but those, there is voidness and there's particularly voidness for the 91 case, so I think that 60B-4 is viable, but 60B-6 is the better one. Thanks. Just trying to decide where we have to dig in. Thank you. Thank you very much. Thank you for your argument, counsel. Case is submitted.